1  Alexander Chen [SBN 245798]
   alexc@inhouseco.com
2  Katja M. Grosch [SBN 266935]
   kmg@inhouseco.com
3  Theodore Lee [SBN 281475]
   tlee@inhouseco.com
4  **INHOUSE CO. LAW FIRM**
   7700 Irvine Center Dr., Suite 800
5  Irvine, California 92618
   Telephone: (714) 932-6659
6  Facsimile: (714) 882-7770

7
   Attorneys for Plaintiff,
8  Eagle Eyes Traffic Industry USA Holding LLC

9
                **UNITED STATES DISTRICT COURT**
10
              **NORTHERN DISTRICT OF CALIFORNIA**
11

12
   ─────────────────────────────────
13 **EAGLE EYES TRAFFIC INDUSTRY**          ) Case No.: 21-cv-07097-TLT
   **USA HOLDING, LLC** a Nevada limited    )
14 liability corporation,                   ) *Hon. Trina L. Thompson Presiding*
                                            )
15         Plaintiff,                       ) **NOTICE OF MOTION AND MOTION OF**
                                            ) **EAGLE EYES FOR PARTIAL**
16 v.                                       ) **SUMMARY JUDGMENT;**
                                            ) **MEMORANDUM OF POINTS AND**
17 **E-GO BIKE LLC**, a California limited  ) **AUTHORITIES IN SUPPORT THEREOF**
   liability company, aka ECOTRIC and       )
18 ECOTRIC.COM; **BING LIU**, an individual;) [*Declarations of Jamie Lin*, *Alexander Chen*,
   **CHEN HONG PING**, an individual; **SEVEN** ) *Esq.*, *and David Sack*; *[Proposed] Order* and
19 **BLACKSMITHS, LLC**, a California limited ) *Judgment* filed concurrently herewith]
   liability company; **MOD VANTEN INC.**, an )
20 Illinois corporation; **METALRAYS, LLC**, a ) FRCP Rule 56
   Delaware limited liability company;      )
21 **FAMETRADE, LLC**, a Wyoming limited    ) Date: December 12, 2023
   liability company; **GLORINTEN, LLC**, an ) Time: 2:00 p.m.
22 Alabama limited liability company; **FANG** ) Dept.: Ctrm. 9, 19th Fl.
   **LIU**, an individual; **ZHAOSHAN JI**, an )
23 individual; **YIPING WANG**, an individual; )
   **CHANGZHOU HAOLING VEHICLE**            ) Trial Date:    February 5, 2024
24 **CO.,LTD.**, a Chinese limited liability entity; ) Action Filed: September 14, 2021
   **CHANGZHOU CHIBAO IMPORT AND**          )
25 **EXPORT TRADE CO.,LTD.**, a Chinese     )
   limited liability entity; and DOES 1-10, )
26                                          )
                                            )
27         Defendants.                      )
                                            )
28 ─────────────────────────────────

**TO EACH PARTY AND ITS COUNSEL OF RECORD:**

YOU ARE HEREBY NOTIFIED THAT on December 12, 2023, at 2:00 p.m., in Courtroom 9, 19th Floor, of this Court, located at 450 Golden Gate Ave, San Francisco, CA 94102, Eagle Eyes Traffic Industry USA Holding("Plaintiff" or "Eagle Eyes") will move the Court, pursuant to Federal Rules of Civil Procedure Rule 56 for partial summary judgment on the first two claims in the Second Amended Complaint in favor of Eagle Eyes and against defendant E-Go Bike LLC ("E-Go") in the amount of $1,179,189 if the court finds there would have been 40% growth in Eagle Eyes' sales, $1,031,265 if the court finds that there would have been 30% growth, or $587,494 if the court finds no growth, plus prejudgment interest at the applicable Federal rate and any other relief as may be just.

This motion is made on the grounds that there is no dispute of material fact with regard to the Complaint's two causes of action for infringement of United States Design Patent No. D790,763 S patent and infringement of United States Design Patent No. D785,838 S patent. E-Go indisputably infringed upon both the D790,763 S patent and the D785,838 S patent, resulting in damages to Eagle Eyes. Eagle Eyes will move the Court for partial summary judgment on the following causes of action:

1.  Its first cause of action for patent infringement as E-Go indisputably copied the design of its products from the headlight design of the D790,763 S patent.

2.  Its second cause of action for patent infringement as E-Go indisputably copied the design of its products from the headlight design of the D785,838 S patent.

Eagle Eyes further seeks an order that the final judgment in this action shall, in addition to any matters determined at trial, award judgment as established by such adjudication.

The motion will be based on this notice, the attached memorandum in support, the declarations of Jamie Lin, David Sack, and Alexander Chen, Esq., all filed with this motion, the files and records in this action, and any further evidence or argument that the Court may properly receive at or before the hearing.

DATED: October 31, 2023                    RESPECTFULLY,

By:    /s/ Alexander Chen___
        Alexander Chen, Esq.
        Katja M. Grosch, Esq.

INHOUSE CO. LAW FIRM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Theodore S. Lee, Esq.
Attorneys for Plaintiff
Eagle Eyes Traffic Industry USA Holding LLC



INHOUSE CO. LAW FIRM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INHOUSE CO. LAW FIRM

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION…………………………………………...… 1

II.    STATEMENT OF FACTS……………………………………...… 1

     A. E-Go's Accused Products...…………………………….... 1

     B. The '763 Patent ……………………..…………………….... 1

     C. The '838 Patent ………...…………………………………. 4

III.   RELEVANT PROCEDURAL HISTORY……...………………… 6

IV.   LEGAL STANDARDS………………………………………… 6

     A. Authority for Summary Judgment………………………….... 6

     B. Authority for Patent Damages………………………………... 7

V.    ARGUMENT………………………………………………… 8

     A. Eagle Eyes is Entitled to Summary Judgment on Both of its
       Infringement Claims………………………………………….... 8

       1. Eagle Eyes Has Established All Elements Necessary
         to Prove Infringement of the '763 Patent (Count 1)……………... 9

       2. Eagle Eyes Has Established All Elements Necessary
         to Prove Infringement of the '838 Patent (Count 2)……………... 9

     B. E-Go's Produced Sales Number Cannot be Trusted………………… 12

     C. Eagle Eye's Damages ……………………………………… 12

       1. Demand for the Patented Product………………….…………… 13

       2. The Absence of Acceptable Non-Infringing Substitutes…………. 14

       3.  The Manufacturing and Marketing Capability to Exploit
         the Demand……………………….......................................... 15

       4. The Amount of Profit Eagle Eyes Would Have Made…………… 17

VI.   CONCLUSION……………………………………………… 19

# **TABLE OF AUTHORITIES**

## **Cases**

*Am. Seating Co. v. USSC Grp., Inc.* (Fed. Cir. 2008)
514 F.3d 1262 ………………………………………………………………… 17

*Anderson v. Liberty Lobby, Inc.* (1986)
477 U.S. 242 …………………………………………………............. 7

*Aro Mfg. Co. v. Convertible Top Replacement Co.* (1964)
377 U.S. 476 ……………………………………………..………… 8

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.* (Fed. Cir. 1988)
853 F.2d 1557 …………………………………………………………… 7

*Becton Dickinson & Co. v. C.R. Bard, Inc.* (Fed. Cir. 1990)
922 F.2d 792 …………………………………………………………........ 7

*BIC Leisure Prods. v. Windsurfing Int'l* (Fed. Cir. 1993)
1 F.3d 1214 …………………………………………………………… 13

*Cleo D. Mathis & Vico Prods. Mfg. Co. v. Spears* (Fed. Cir. 1988)
857 F.2d 749 …………………………………………………………… 8

*Cohesive Techs., Inc. v. Waters Corp.* (Fed. Cir. 2008)
543 F.3d 1351 ……………………………………………..………… 14

*Celotex Corp. v. Catrett* (1986)
477 U.S. 317 ………………………………………………..………… 6

*Del Mar Avionics, Inc. v. Quinton Instrument Co.* (Fed. Cir. 1987)
836 F.2d 1320 ……………………………………………..………... 14

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.* (Fed. Cir. 2009)
567 F.3d 1314 ……………………………………………………… 13

*Grain Processing Corp. v. Am. Maize-Products Co.* (Fed. Cir. 1999)
185 F.3d 1341……………………………………………..…………... 14

*Gillette Co. v. Energizer Holdings, Inc.* (Fed. Cir. 2005)
405 F.3d 1367 ……………………………………………..………… 8

*GM Corp. v. Devex Corp.* (1983)
461 U.S. 648 …………………………………………………………........ 8

*Kaufman Co. v. Lantech, Inc.* (Fed. Cir. 1991)
    926 F.2d 1136 ………………………………..…………………………   17

*Lam, Inc. v. Johns-Manville Corp.* (Fed. Cir. 1983)
    718 F.2d 1056 …………………………………….………………………   17

*Levin Bros. v. Davis Mfg. Co.* (8th Cir. 1934)
    72 F.2d 163 …………………………………………….…………………   17

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB* (Fed. Cir. 2003)
    344 F.3d 1205 ……………………………………………………………   8

*Panduit Corp. v. Stahlin Bros. Fibre Works* (6th Cir. 1978)
    575 F.2d 1152 ……………………………………………………………   13-15, 17, 18

*Paper Converting Mach. Co. v. Magna-Graphics Corp.* (Fed. Cir. 1984)
    745 F.2d 11 …………………………………………………………..…   14, 17

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.* (Fed. Cir. 2017)
    875 F.3d 1369 ……………………………………………………………   14

*Reeves v. Sanderson Plumbing Prods.* (2000)
    530 U.S. 133 …………………………………………….…..………   7

*Rite-Hite Corp. v. Kelley Co.* (Fed. Cir. 1995)
    56 F.3d 1538 ……………………………………………………………   12-13

*State Indus., Inc. v. Mor-Flo Indus., Inc.* (Fed. Cir. 1989)
    883 F.2d 1573 ……………………………………………...…………   15

*TEK Glob., S.R.L. v. Sealant Sys. Int'l* (Fed. Cir. 2019)
    920 F.3d 777 ……………………………………………………………   15

*Tronzo v. Biomet, Inc.* (Fed. Cir. 2003)
    318 F.3d 1378 …………………………………………...……………   8

*United States v. Diebold, Inc.* (1962)
    369 U.S. 654 ……………………………………………...…………   6

*Versata Software, Inc. v. SAP Am., Inc.* (Fed. Cir. 2013)
    717 F.3d 1255 ……………………………………………….…………   13

*Yale Lock Mfg. Co. v. Sargent* (1886)
    117 U.S. 536 ……………………………………………………….…   8, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INHOUSE CO. LAW FIRM



**Statutes**

35 U.S.C.S. § 271……………………………………………………...……………... 3, 6, 8

35 U.S.C.S. § 282………………………………………...…………………. 8

35 U.S.C.S. § 284……………………………………………..…………………….. 7, 8

Fed. Rules Civ. Proc. R. 56……………………………………………………….. 6, 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INHOUSE CO. LAW FIRM

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Eagle Eyes Traffic Industry USA Holding LLC ("Plaintiff" or "Eagle Eyes") respectfully submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment or in the alternative Partial Summary Judgment ("Motion") as detailed in the Notice above.

This lawsuit concerns patent infringement by defendant E-Go Bike, LLC ("Defendant", "E-Go") of Plaintiff's United States Design Patents No. D790,763 S ("'763 Patent") and No. D785,838 S ("'838 Patent") (collectively, "Patents-in-Suit"), which are both related to vehicle headlights. All facts necessary to prove Eagle Eyes' two causes of action for infringement of the '763 and '838 Patents are established by this motion and supporting documents as a matter of law. E-Go has not denied that it infringed upon Eagle Eyes' Patents-in-Suit. Eagle Eyes submits that it has been damaged in the amount of $1,179,189 if the court finds there would have been forty (40)% growth in Eagle Eyes' sales, $1,031,265 if the court finds that there would have been thirty (30)% growth, or $587,494 if the court finds no growth.

Therefore, Eagle Eyes is entitled to partial summary judgment on the first and second claims in its Second Amended Complaint.

### II.    STATEMENT OF FACTS

#### A.    *E-Go's Accused Products*

E-Go's accused products are aftermarket replacement headlamps for the 2004-2017 Volvo VN Series ("Accused Products"). Decl. Lin, ¶ 3. Through various alias Amazon and eBay resellers, including hi_supersop, gogreenbike, lucksports-mall, ECOTRIC Store, and HECASA Store, E-Go posted informational materials showing its sale of the Accused Products on its product listing on Amazon.com. *Id.* at ¶ 4, Ex. 1.

#### B.    *The '763 Patent*

On June 27, 2017, the USPTO duly and legally issued the '763 Patent, entitled "Exterior Surface Configuration of a Vehicle Headlight Reflector" .Decl. Lin, ¶ 5, Ex. 2.Eagle Eyes is assignee and owner of the entire right, title, interest and damages incurred in and to the '763 Patent and vested with the right to bring this suit for damages and other relief. *Ibid.*

The '763 Patent has one single claim directed to the ornamental design for an exterior surface configuration of a vehicle headlight reflector as shown below:



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

Decl. Chen, ¶¶ 3, 4, Ex.1 .

E-Go has had knowledge of the '763 Patent since at least the filing of this suit in September 2021. [Doc. No. 1] E-Go copied the design of the Accused Products from the headlight reflector design

of the '763 Patent. A side-by-side comparison of the '763 patented design and a photograph of E-Go's Accused Products purchased by Eagle Eyes is shown below:



| '763 Patent | Accused Product |
|---|---|

Decl. Chen, ¶¶ 3-5, Ex. 2.

As shown in the pictures, the headlight reflector design of Accused Products is the same or substantially the same as the headlight reflector design of the '763 Patent. The headlight reflector designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase E-Go's products believing them to be substantially the same as the headlight reflector design protected by the '763 Patent.

Eagle Eyes has not granted a license or any other authorization to E-Go to make, use, offer for sale, sell, or import headlights that embody the headlight reflector design patented in the '763 Patent and which is proprietary to Eagle Eyes. Decl. Lin, ¶ 6. Without authority, E-Go has infringed and is believed to continue to infringe the '763 Patent by, *inter alia*, making, using, offering to sell, selling, and/or importing in the United States, including in the State of California and within this District, products infringing the ornamental design covered by the '763 Patent in violation of 35U.S.C. § 271, including but not limited to the Accused Products.

### C.    The '838 Patent

On May 2, 2017, the USPTO duly and legally issued the '838 Patent, entitled "Vehicle Headlight". Decl. Lin, ¶¶ 6, 7, Ex. 3. Eagle Eyes is assignee and owner of the entire right, title, interest and damage incurred in and to the '838 Patent and vested with the right to bring this suit for damages and other relief. *Ibid.*

INHOUSE CO. LAW FIRM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INHOUSE CO. LAW FIRM

The '838 Patent has one single claim directed to the ornamental design for an exterior surface configuration of a vehicular headlight as shown below:



Decl. Chen, ¶¶ 6, 7, Ex. 3.

E-Go has had knowledge of the '838 Patent since at least the filing of this suit in September 2021. [Doc. No. 1] E-Go copied the design of the Accused Products from the headlight design of the '838 Patent. A side-by-side comparison of the '838 patented design and an exemplary specimen of E-Go's Accused Products is shown below, the photograph of an exemplary headlight sold by E-Go taken from its eBay product listing:



| '838 Patent | Accused Product |
|---|---|

Decl. Chen, ¶ 6-8, Ex. 4.

As shown in the pictures, the headlight design of Accused Products is the same or substantially the same as the headlight design of the '838 Patent. The headlight designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase E-Go's products believing them to be substantially the same as the headlight design protected by the '838 Patent.

Eagle Eyes has not granted a license or any other authorization to E-Go to make, use, offer for sale, sell, or import headlights that embody the headlight design patented in the '838 Patent and which is proprietary to Eagle Eyes. Decl. Lin, ¶ 8. Without authority, E-Go has infringed and is believed to continue to infringe the '838 Patent by, *inter alia*, making, using, offering to sell, selling, and/or importing in the United States, including in the State of California and within this District, products infringing the ornamental design covered by the '838 Patent in violation of 35 U.S.C. § 271, including but not limited to the Accused Products.

## III.    RELEVANT PROCEDURAL HISTORY

Eagle Eyes filed its Complaint on September 14, 2021, for patent infringement of the Patents-in-Suit against E-Go. [Doc. No. 1] The operative Second Amended Complaint was filed on January 26, 2023, alleging three causes of action against E-Go: infringement of the '763 Patent, infringement of the

'838 Patent, and fraudulent transfer under California Civil Code 3439 *et seq.* [Doc. No. 70] E-Go filed its answer on September 18, 2023. [Doc. No. 120] On April 26 and May 4, 2023, Eagle Eyes dismissed all defendants other than E-Go. [Doc. Nos. 93, 96]

On January 5, 2022, Eagle Eyes served E-Go with its Request for Admissions, Set One ("RFAs"), *inter alia.* Decl. Chen, ¶ 9, Ex. 5. E-Go failed to respond to the RFAs, timely or otherwise. *Id.* at ¶ 9, Ex. 5. On May 25, 2022, Eagle Eyes filed a motion to compel and to deem the RFAs admitted. [Doc. No. 30] E-Go opposed on June 16, 2022. [Doc. No. 41]; Eagle Eyes replied on June 17, 2022. [Doc. No. 43] A remote hearing was held on June 30, 2022. [Doc. No. 44]

On July 1, 2022, the Court issued an Order granting Eagle Eyes' motion to compel against E-Go, which held, in pertinent part, that all of Eagle Eyes' Requests for Admission (Nos. 1-23) were admitted. [Doc. No. 45]

## IV.   LEGAL STANDARDS

### A.  Authority for Summary Judgment

The Federal Rules of Civil Procedure ("FRCP") provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(a). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In considering a motion for summary judgment, the court must examine all evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If the moving party does not bear the burden of proof at trial, it may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex, supra*, 477 U.S. at 325.

Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).The nonmoving party must support an assertion that a material fact is genuinely disputed by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." FRCP 56(c)(1).

When deciding whether a genuine issue of material fact exists, the court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "The mere existence of some alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted). "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

The FRCP apply to patent cases. As such, summary judgment is appropriate in a patent case where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795–96 (Fed. Cir. 1990); *see also Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988) ("[T]his court has repeatedly emphasized that 'summary judgment is as appropriate in a patent case as in any other.'").

### B.  Authority for Patent Damages

35 U.S.C. 284 ("Section 284") addresses both compensatory and enhanced damages. The portion directed to compensatory damages states:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them. . . .
>
> The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

§ 284.

Awarding compensatory patent infringement damages through litigation attempts to assess "the difference between the [patentee's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Aro Mfg. Co. v. Convertible Top Replacement*

INHOUSE CO. LAW FIRM

1  *Co*, 377 U.S. 476, 507 (1964), quoting *Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536, 552 (1886). The

2  question to be asked in determining such damages is "had the Infringer not infringed, what would [the]

3  Patent Holder . . . have made?" *Aro,* 377 U.S. at 507.

4        Compensatory design patent damages traditionally have fallen into four categories, one or more

5  of which may be involved in a particular case: lost profits; established royalty, reasonable royalty, and

6  the infringer's profits. In addition, the court may award pre-judgment interest under Section 284 on the

7  compensatory portion of the damages award and on any award of attorney fees. *General Motors Corp. v.*

8  *Devex Corp.*, 461 U.S. 648 (1983) (pre-judgment interest award is the norm); see also *Mathis v. Spears*,

9  857 F.2d 749 (Fed. Cir. 1988) (pre-judgment interest may be awarded on attorney fees). Finally, the

10  court may award post-judgment interest under FRCP 37 on the entire award. *Tronzo v. Biomet, I*nc., 318

11  F.3d 1378 (Fed. Cir. 2003).

12  **IV.**   **ARGUMENT**

13        *A.*  *Eagle Eyes is Entitled to Summary Judgment on Both of its Infringement Claims*

14        In order to establish a cause of action for patent infringement, plaintiff must prove two

15  elements: the existence of a valid U.S. Patent and proof of the infringement of the patent's claims by

16  the defendant's accused device, either literally or via equivalents.35 U.S.C. § 271. In order to establish

17  a likelihood of success on the merits for its claim of patent infringement, Eagle Eyes must show it is

18  likely that a trier of fact would find the Patents-in-Suit are valid and infringed. *See Gillette Co. v.*

19  *Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005). An issued patent is presumed valid. 35

20  U.S.C. § 282; *Medical Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1220 (Fed.

21  Cir. 2003). Eagle Eyes herein establishes all elements necessary to prove E-Go's infringement of both

22  of the Patents-in-Suit.

23        **1.**  **Eagle Eyes Has Established All Elements Necessary to Prove Infringement of the**

24               **'763 Patent (Count 1)**

25        Eagle Eyes is indisputably the owner of the '763 Patent, and said patent is valid. Decl. Lin ¶ 5,

26  Ex. 2; Decl. Chen, ¶¶ 3, 10, 11, Ex. 6 [RFA No. 5]. E-Go has admitted that it copied the design of its

27  Accused Products from the headlight design of the '763 Patent and that the designs are so similar as to

28  be nearly identity such that an ordinary observer, giving such attention as a purchaser usually gives,

would be deceived by the substantial similarity between the designs so as to be induced to purchase E-

*INHOUSE CO. LAW FIRM*

Go's products believing them to be substantially the same as the headlight design protected by the '763 Patent. Decl. Chen, ¶ 11, Ex. 6 [RFA Nos. 1-4, 7-14]. Finally, E-Go has admitted that it has listed and sold the Accused Products, and that Defendant is aware that its customer and end-users are using the Accused Products in an infringing manner. *Ibid.* E-Go has admitted that none of its affirmative defenses have support in law and fact. *Id.* at ¶ 12, Ex. 6 [RFA Nos. 22-23].

    As Eagle Eyes has proven every element of a claim for patent infringement, Eagle Eyes is entitled to partial summary judgment on this count.

    **2.**   **<u>Eagle Eyes Has Established All Elements Necessary to Prove Infringement of the '838 Patent (Count 2)</u>**

    Eagle Eyes is indisputably the owner of the '838 Patent, and said patent is valid. Decl. Lin ¶ 7, Ex. 3; Decl. Chen, ¶¶ 6, 10, 12, Ex. 6 [RFA No. 6].E-Go has admitted that it copied the design of its Accused Products from the headlight design of the '838 Patent and that the designs are so similar as to be nearly identity such that an ordinary observer, giving such attention as a purchaser usually gives, would be deceived by the substantial similarity between the designs so as to be induced to purchase E-Go's products believing them to be substantially the same as the headlight design protected by the '838 Patent. Decl. Chen, ¶ 13, Ex. 6 [RFA Nos. 1-4, 15-21]. Finally, E-Go has admitted that it has listed and sold the Accused Products, and that Defendants is aware that its customer and end-users are using the Accused Products in an infringing manner. *Ibid.* E-Go has admitted that none of its affirmative defenses have support in law and fact. *Id.* at ¶ 14, Ex. 6 [RFA Nos. 22-23].

    As Eagle Eyes has proven every element of a claim for patent infringement, Eagle Eyes is entitled to partial summary judgment on this count. If for some reasons this Court does not agree that the order deeming the RFAs admitted establishes liability, Eagle Eyes submits to this Court that by performing the ordinary observer test, there is no doubt the accused product infringes the '858 Patent.

    First and foremost, E-Go does not deny that it has sold accused products in the US. In fact, E-Go has produced a document showing the accused products were manufactured by Tongzhecheliangqipei Factory and has sold ninety-two (92) sets of accused products in total. Decl. Chen, ¶ 15, Ex. 7.

    To determine direct infringement of a design patent, one must construe the claim and then compare it to the design of the accused device. When so doing, one must compare the overall

appearances of the accused design and the claimed design. Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.

When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same. If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, one may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same. If the accused design is visually closer to the claimed design than it is to the closest prior art, one may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

For '838 patent, this Court has construed the claim as:

> The ornamental design for a vehicle headlight, as shown in the solid lines and associated claimed surfaces of Figures 1-4 and described in the specification of the D838 patent, with the exclusion of the exterior parameter of the headlight design, the exterior surface shape of the headlight lens, and the arrangement of the reflectors with respect to each other and the general layout within the headlight. The broken lines in Figures 1-4 form no part of the claimed design.

[Dkt 113]

Accordingly, under the three-part comparison of the accused product with the principal prior art and the claimed design, it is clear that the accused product has all the features of the claimed design, is closer to the claimed design than the prior art and has the same distinctive feature of the teardrop turn signal light that is conspicuously differ from the principal prior art as illustrated on the following page:

//

//

//

//

INHOUSE CO. LAW FIRM

//



| Claimed Design | Prior Art | Accused |
|---|---|---|
| FIG. 1 | FIG. 2 | |
| FIG. 2 | FIG. 3 | |
| FIG. 3 | FIG. 9 | |

1
2
3
4
5
6
7
8
9



FIG. 4    FIG. 6

INHOUSE CO. LAW FIRM



10      Jamie Lin, employed by Eagle Eyes and a sales director in the aftermarket replacement
11   headlight industry for twenty (20) years, is very familiar with this market. Decl. Lin, ¶ 20, Lin is not
12   only qualified as an ordinary purchaser but also opines the following: (1) the ordinary observer in the
13   case is a Volvo VNL truck owner looking to replace its headlights for aesthetic improvement; (2) the
14   claimed design, as distinguished from the factory OEM design, contains a unique teardrop shaped turn
15   signal light that is shown using a tear shape reflector; (3) this unique teardrop shaped turn signal light
16   conspicuously departs from the OEM light and is copied in the accused design; (4) that the accused
17   design is visually closer to the claimed design than it is to the closest OEM Volvo prior art; and (5) that
18   the overall impression of the claimed design here and as compared to the accused, when considering the
19   details to which an ordinary observer would attend, the ordinary observer would be induced into
20   purchasing the accused product from E-Go as opposed to the patented product from Eagle Eyes. *Id.* at
21   ¶¶ 21-25. Ex 7-10. For all these reasons, there cannot be any material issue as liability.

22      **B.  E-Go's Produced Sales Number Cannot Be Trusted**

23      E-Go produced a document in discovery purporting to summarize all of their transactions
24   regarding the infringing products. Decl. Chen, ¶ 15, Ex.7. However, in preparation for this lawsuit,
25   Plaintiff placed two orders in 2021, but only the first of these orders appears thereon – order ID 111-
26   9234591-3550653 was not disclosed by E-Go. *Id.* at ¶¶ 17-18, 20, Exs. 7-9.

27      Further demonstrating E-Go's underhanded conduct in concealing its sales are documents
28   disclosed by Amazon in response to a subpoena regarding E-Go's sales, and on Amazon alone, based

on the data produced by Amazon, Defendant sold a total of XXXXXXXXXXXX sets of accused headlights through Amazon with an average selling price of $XXXX per unit for a total gross revenue of $XXXXXXX. This is XX% more than what E-Go disclosed as having been sold via all sources. Decl. Lin, ¶ 15, Ex. 6. According to Mr. Lin, it is typically the case that Amazon sales constitute about fifty percent of all sales while eBay, other platforms, and wholesales would constitute about fifty percent of other all sales. Decl. Lin ¶ 27.  It is very clear that E-Go cannot be trusted for any numbers it claims to have sold or that it has ceased selling the accused products.

### C. *Eagle Eye's Damages*

Given E-Go's lack of candor concerning its sales of the accused products and the extensive reputational damage these poorly made copycat inherently caused, Eagle Eyes seeks to recover its damage under the lost profit theory. Decl. Lin, ¶¶ 7-27.

It is well settled that Section 284 gives the plaintiff the option of recovering lost profits that plaintiff would have made "but for" defendant's infringement. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). The patent owner "must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite, supra*, 56 F.3d at 1545. Here, Eagle Eyes elects to calculate damages based on its lost profits, calculated from its historical sales data and generally accepted accounting principles.

Eagle Eyes' methodology in determining its lost profits is based on the accepted test for lost profits damages as set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) ("*Panduit*"), which provides that in order to be entitled to lost profits, the patent owner must establish the following: "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made." *Panduit, supra*, 575 F3d at 1156.

### 1. __Demand for the Patented Product__

The first component of the *Panduit* test considers demand for the product. The patented product for which demand must be shown may include either one covered by the patent or a product that directly competed with E-Go's Accused Products. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *see also Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255,

1265 (Fed. Cir. 2013) and *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1548-49 (Fed. Cir. 1995).Eagle Eyes is not required to prove demand for a particular version of the patented design. *Depuy Spine*, 567 F.3d at 1330-1331. Eagle Eyes may use any relevant evidence to show demand for the patented product, including, for example, sales of embodying products, the accused infringer's decision to continue selling the accused product despite the risk of infringement, and the patented feature's promotion or significance. *See BIC Leisure Products, Inc. v. Windsurfing Intern., Inc*., 1 F.3d 1214, 1218–19 (Fed. Cir. 1993).

      Eagle Eyes' SKUs VL007-Series L, VL007-Series R, and other variations of VL007 embody the Patents-in-Suit and are the products were affected by the infringing activities of E-Go. Decl. Lin, ¶ 11. Based on Eagle Eyes' sales records, it sold 964 units in 2016, 5,353 units in 2017, 5,057 units in 2018, 5,678 units in 2019, 9,626 units in 2020, and 14,017 units in 2021. In 2022, after the infringing products appeared on the market, Eagle Eyes of the VL007 Series L/R sales dropped to 8,450 units. *Ibid.* To allow baseline comparison between the sales data of the Defendant with that of the Plaintiff, the "unit" coined here refers to either a left-hand headlight or a right-hand headlight, while a "set" coined includes two (2) units comprising a left-hand headlight and a right-hand headlight.  In any case, the element of demand is satisfied in view of at least these sales figures.

      In sum, but for the accused products, given that Eagle Eyes' products average a life span of ten (10) years, there is no reason to explain the sudden drop other than the illegal infringing sales. *Ibid.* Indeed, it is 2021 when E-Go begin to sell its illegal counterfeits. *Ibid.* In fact, given that Defendant has repeatedly lied and refused to be forthright about its sales number, the identity of its manufacturer, there is no reason to believe that infringing sales have ceased.

      This information was also communicated to Eagle Eyes' expert witness, David Sack, CPA ("Sack"). Decl. Sack, ¶¶ 10, 36, Ex. 1. Based on the sales breakdown for Eagle Eyes' product embodying the Patents-in-Suit, Sack determined that the sale of this product was on an upward trajectory from 2019 until 2021. *Id*. at ¶¶ 21-23, Ex.1. In 2022, the sales declined by 40%. *Id.* at ¶¶ 21, 22, 36, Ex. 1. Based on the data and modeling, Sack determined that the sales of Eagle Eyes' product should have continued to increase upwards in the absence of infringing activity. *Id.* at ¶¶ 21-23, Ex. 1. Thus, there is no question that this element is satisfied.

### 2.  The Absence of Acceptable Non-Infringing Substitutes

INHOUSE CO. LAW FIRM

The second *Panduit* factor requires Eagle Eyes to show a lack of acceptable, non-infringing alternatives. "To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (citing *Grain-Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353-55 (Fed. Cir. 1999))."The patentee is not obliged to negate every possibility that a purchaser might not have bought the patentee's product instead of the infringing one or might have foregone the purchase altogether." *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987) (citing *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21 (Fed. Cir. 1984)).

Whether a potential alternative would be acceptable to potential consumers depends on whether it would be acceptable *compared to* the Eagle Eyes' product, not whether it *could substitute*. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1373 (Fed. Cir. 2008). The mere existence of a competing product, by itself, does not make it an acceptable substitute. *Ibid*. Eagle Eyes has invested heavily in the development of the Patents-in-Suit. As Eagle Eyes is the owner of the Patents-in-Suit and has not licensed said Patents to any third parties outside of the Eagle Eyes group and there are no acceptable potential alternatives to consumers. Decl. Lin, ¶ 9.

Specifically, while there exist alterative replacement headlights available, none of them embodies Eagle Eyes' specific teardrop shaped top light embodied in the patented designs. Thus, when a customer sets forth to purchase a product due to Eagle Eyes' unique teardrop shaped design, there is no non-infringing substitute other in the market. Decl. Lin, ¶ 10. For these reasons, this element is satisfied.

## D.  The Manufacturing and Marketing Capability to Exploit the Demand

The third *Panduit* factor requires Eagle Eyes to demonstrate that it had the manufacturing capabilities to exploit the demand met by the infringing sales during the period of infringement. In other words, Eagle Eyes must have had the capacity to absorb the market share of the infringing sales. *Panduit*, *supra*, 575 F.2d at 1156.

Eagle Eyes herein demonstrates its ability to meet demand based on its past business practices and relationships, sales reports, financial strength, efforts to develop a market for the patented product, aggressiveness in the market, market competition, and lost sales. See *Yarway Corp. v. Eur-Control*

INHOUSE CO. LAW FIRM

*USA, Inc.*, 775 F.2d 268, 276–77 (Fed. Cir.1985) (holding that past business practices of investing substantial amount of time and money developing market for patented product and aggressively protecting such market was probative of capability to meet demand); *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 790(Fed.Cir.2019) (finding testimony regarding patentee's loss of business, past customer relationships, and prior sales activities sufficiently supported the plaintiff's manufacturing capabilities); *State Indus.*, 883 F.2d at 1579 (holding evidence of head-to-head competition, real sales losses, and patentee's national recognition sufficient to uphold district court's finding of manufacturing capacity).

Eagle Eyes, through its parent company in Taiwan, has invested heavily in the development of the products bearing the Patents-in-Suit. Decl. Lin, ¶ 9. The process was extremely lengthy and a substantial sum of money was invested. *Ibid.* Specifically, research and development cost approximately $10,000, manufacturing of prototypes cost approximately $12,000, fitment testing cost approximately $5,000, CAD design and BOM developments for final production design cost approximately $7,000, compliance processing cost is approximately $50,000, making of molds for the production model cost approximately $249,930, and prosecution of the patent applications for the Patents-in-Suit cost approximately $10,000. *Ibid.*

Eagle Eyes has also invested heavily in the marketing and channeling of products bearing the Patents-in-Suit. Decl. Lin, ¶ 9. The investment in the marketing and channeling of products includes making of marketing materials for internet and physical catalogs, attending trade shows and establishment of sales partners and distributors, based on the apportionment of costs for the entire product line, is approximately $30,000. *Ibid.*

Eagle Eyes currently has over 1,000 product SKUs, and is capable of producing 30,000 units in any given month. Decl. Lin, ¶ 9. If need be, the production capacity can be increased using the existing infrastructure to 45,000 units per month. *Ibid.* Further, any specific increase in demand for a particular SKU can be accommodated by reducing production of other less in demand products. In 2021, at the peak of its sales quantity, Eagle Eyes group manufactured and sold 14,017 units. *Ibid.* That is approximately 1,169 units a month, which is only 3.89% of Eagle Eyes total monthly output capacity. *Ibid.* While the production and sales of the products embodying the Patents-in-Suit dropped from 14,017 per annum in 2021 to 8,450 per annum in 2022, after E-Go's infringing products were brought

INHOUSE CO. LAW FIRM

to market, there is no reason why Eagle Eyes could not have produced more products had the demand been present. *Ibid.*

In fact, if Eagle Eyes maintained the same trajectory in 2022 of growing 40% per year, the sale and production projected number would have been 19,645 units per annum, which is about 1,635 units per month, only 5.45% of Eagle Eyes' total output capacity. Decl. Lin, ¶ 9. Any increase in demand for the products embodying the Patent-in-Suit would easily be handled by Eagle Eyes. *Ibid.* Accordingly, this element is satisfied.

## E.  **The Amount of Profit Eagle Eyes Would Have Made**

The fourth *Panduit* element requires Eagle Eyes to prove the amount of profit it would have made but for E-Go's alleged infringing conduct. The calculation supporting the amount of a patentee's lost profits does not require exact precision, but only "that there was a reasonable probability that the infringing sales caused the loss of profits." *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991).

"Any doubts regarding the calculatory precision of the damage amount must be resolved against the infringer." *Kaufman Co., Inc. v. Lantech, Inc.*, *supra*, 926F.2d at 1141. "[W]hen the patentee establishes the reasonableness of the inference, the patentee has sustained the burden of proving his entitlement to lost profits for all infringing sales. The onus is then placed on the infringer to show that it is unreasonable to infer that some or all of the infringing sales probably caused the patentee to suffer the loss of profits." *Ibid.* Recoverable damages for lost profits can include the profits the patentee lost because of diverted sales, price erosion, and other factors caused by the infringement. *See American Seating Co. v. USSC Group, Inc.*, 514 F. 3d 1262, 1270 (Fed. Cir. 2008) (diverted sales are a form of lost profits that may be recoverable and may result from a number of infringing activities, including an infringer's offer to sell); *Yale Lock Mfg. Co. v. Sargent,* 117 US 536, 551 (1886) (the reduction of prices and the consequent loss of profits are recoverable as damages for lost profits);

One accounting method for proving post profits is the "incremental income" or "gross margin" approach:

> The incremental income approach to the computation of lost profits is well established in the law relating to patent damages. See, e.g., *Lam, Inc. v. Johns-Manville Corp.*, [718 F.2d1056 (Fed. Cir. 1983)]; *Levin Bros. v. Davis Manufacturing Co.*, 72 F.2d 163(8thCir.1934). The approach recognizes that it does not cost as much to produce unit N + 1 if the first N

<div style="margin-left:2em">

(or fewer) units produced already have paid the fixed costs. Thus, fixed costs—those costs which do not vary with increases in production, such as management salaries, property taxes, and insurance—are excluded when determining profits.

</div>

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984).

That is, absent E-Go's infringement of the Patents-in-Suit, consumers would have purchased additional Eagle Eyes' products embodying those patent designs.

Based on the information she retrieved from the sales database, Eagle Eyes' average selling price for the VL007-series L is 6,018.82 New Taiwan Dollar (NTD). Decl. Lin, ¶ 13. The average selling price for the VL007-series R is 6,020.19 NTD. *Ibid.* The average selling price is therefore 6,019.51 NTD, or approximately $185.63 in US dollars. *Ibid.* The cost per unit is 2,647.77 NTD, or approximately $81.65 US dollars. *Ibid.* Therefore, the average gross profit for each unit is 3,317.74 NTD, resulting an average gross margin of 56%. *Ibid.* Since the fixed costs of marketing and channeling are already included as sunk costs, there is no incremental cost for each unit in sales and marketing and therefore the lost profit for each unit not sold is $103.98. *Ibid.*

To calculate damages, Eagle Eyes' expert Sack started by analyzing actual unit sales for 2016 through 2022. Decl. Sack, ¶ 36, Ex. 1. Sack calculated the percentage change in units sold from year to year and found that sales of the affected products to be on an upward trajectory. Specifically, he found that sales increased by 69% from 2019 to 2020, and increased by again 45% in 2020 to 2021. However, once the infringing sales began in 2021, the affected products experienced a substantial decline of 40% in 2022 from 2021.*Id.* at ¶¶ 22, 36, Ex. 1.

Based on the descending growth rate from 69% to 45%, under the but for scenario, Sack then calculated the lost profits for 2022 under 3 different growth rate assumptions: 0%, 30%, and 40%. *Id.* at ¶ 38, Ex. 3. Sack applied the average selling price and applied that to the total number of units under each of the presented growth rates to determine the normalized revenues, from which Sack deducted Eagle Eyes' actual 2022 revenue from the products embodying the Patents-in-Suit. *Id.* at ¶ 38, Ex. 3. The 2022 gross profit margin (56%) was then applied to the lost revenues to calculate lost profits. *Id.* at ¶ 38, Ex. 3. Eagle Eyes submits that 30% growth rate for 2022 is reasonable under the "but for" scenario, given that the uninterrupted growth rate prior to E-Go's infringing products entering the market, and the declining growth rate thereafter. In sum, for 2022, at 0% growth, lost profits total

INHOUSE CO. LAW FIRM

$587,494; at 30% growth, lost profits totaled $1,031,265; and at 40% growth, lost profits totaled $1,179,189. *Id.* at ¶ 38, Ex. 3.

Based on this data, Eagle Eyes has shown each element of the test, to wit: that there is (1) demand for Eagle Eyes' patented products; (2) a lack of non-infringing alternatives to Eagle Eyes' patented headlights; (3) Eagle Eyes had the manufacturing and marketing capability to exploit the aforementioned demand; and (4) the profit that Eagle Eyes would have made in 2022 absent E-Go's infringing sales, which is between $587,494 and $1,179,189 depending on the forecasted growth.

## V.   CONCLUSION

Based on all of the foregoing, plaintiff Eagle Eyes Traffic Industry USA Holding LLC respectfully requests that this Court grant its Motion for Partial Summary Judgment as to its first two causes of action and enter judgment in its favor against Defendant E-Go Bike, LLC, in the amount of $587,494 if the court finds that there would be no forecasted growth in Eagle Eyes' sales, $1,031,265 if the court finds that there would have been 30% growth, and $1,179,189 if the court finds there would have been 40% growth, plus prejudgment interest at the applicable Federal rate.

DATED: October 31, 2023                    RESPECTFULLY, INHOUSE CO. LAW FIRM

                             By:    /s/ Alexander Chen
                                    Alexander Chen, Esq.
                                    Katja M. Grosch, Esq.
                                    Theodore S. Lee, Esq.
                                    Attorneys for Plaintiff
                                    Eagle Eyes Traffic Industry USA Holding LLC

INHOUSE CO. LAW FIRM