UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| EAGLE EYES TRAFFIC INDUSTRY USA HOLDING LLC,<br><br>Plaintiff,<br><br>v.<br><br>E-GO BIKE LLC,<br><br>Defendant. | Case No. 21-cv-07097-TLT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 138 |
|---|---|

Before the Court is Eagle Eyes Traffic Industry USA Holding's ("Eagle Eyes") Motion for Partial Summary Judgment ("Motion"), ECF No. 138. For the reasons below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.  **BACKGROUND**

Eagle Eyes' Motion concerns two patents: US Design Patent No. D790,763 ('763 Patent) and US Design Patent No. D785,838 ('838 Patent). *See* Mot. 1. Both the '763 Patent and the '838 Patent relate to the design of vehicle headlights. *See* Decl. Alexander Chen ("Chen Decl.") ¶ 2, ECF No. 138-1. The '763 Patent concerns headlight reflectors, and the '838 Patent concerns the headlight itself. *See id.* ¶¶ 3–8.

On September 14, 2021, Eagle Eyes filed suit for patent infringement against Defendant E-Go Bike LLC ("E-Go")[1]. *See* Compl. ¶¶ 6, 13–34, ECF No. 1. During discovery, Eagle Eyes served E-Go with requests for admissions ("RFAs"). *See* Mot. Ex. 5 ("RFAs"), ECF No. 138-1. After E-Go failed to timely respond, Eagle Eyes filed a motion to compel and to deem the RFAs

---

[1] About nine months later, Eagle Eyes amended its Complaint, adding multiple defendants. *See* Am. Compl. ¶¶ 7–10, ECF No. 39. It subsequently dismissed all defendants but E-Go. *See* Notices of Voluntary Dismissals, ECF Nos. 93, 96.

admitted. *See* ECF No. 30. Magistrate Judge Hixson granted Eagle Eyes' request. *See* Order ("RFA Order") 4, ECF No. 45. His ruling was based in part on the plain text of Federal Rule of Civil Procedure 36, which explains that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." *Id.* (quoting Fed. R. Civ. Proc. 36(a)(3)). Judge Hixson's ruling was also based on the fact that Eagle Eyes had repeatedly warned E-Go that it would move to compel, and eighty days after acknowledging receipt of the RFAs, E-Go still had not responded. *See id.* Accordingly, Judge Hixson ordered the majority of the RFAs admitted on July 1, 2022. *See id.*

In relevant part, E-Go admitted that "the headlight design of the Accused Products is the same or substantially the same as the headlight design of the '763 Patent. The headlight designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs to be induced to purchase Defendant's products believing them to be substantially the same as the headlight design protected by the '763 Patent." RFAs 8. Likewise, it admitted that "the headlight design of the Defendant's Accused Products is the same or substantially the same as the headlight design of the '838 Patent. The headlight designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs to be induced to purchase Defendant's products believing them to be substantially the same as the headlight design protected by the '838 Patent." *Id.* at 10.

After Judge Hixson issued his order, Eagle Eyes filed a second amended complaint—the operative complaint in this case—bringing claims of patent infringement for both the '763 and '838 Patents, as well as a claim of fraudulent transfer. *See* 2d Am. Compl. ¶¶ 25–60, ECF No. 70. E-Go answered the complaint, denying its allegations. *See generally* Answer, ECF No. 120.

On October 31, 2023, Eagle Eyes moved for summary judgment on its patent infringement claims. After E-Go did not respond, the Court ordered it to file its response and to show cause for its failure to do so. *See* ECF No. 141. On November 27, E-Go filed its Response, ECF No. 143.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.[2]

Where a defendant moves for summary judgment based on a claim for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Eagle Eyes argues that based on the RFAs, it has established all the necessary elements for patent infringement. *See* Mot. 8–13. It contends that the only issue left for the Court to decide is damages. *See id.* at 13–19. E-Go maintains that the RFAs are no longer operative and that there are insufficient undisputed material facts to establish damages. *See* Resp. 4–8.

### A. The RFAs are still admitted.

As a preliminary matter, the Court must decide whether the RFAs Judge Hixson ordered admitted are admitted for the purposes of summary judgment. E-Go contends that the admissions do not apply to Eagle Eye's Motion. Resp. 4. Eagle Eyes argues that under Federal Rule of Civil Procedure 36, the matters remain admitted. Reply 3–5, ECF No. 147.

---

[2] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately be capable of being put in admissible form. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial'").

3

Under Rule 36(b), "[a] matter admitted . . . is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." "The rule permits the district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when (1) 'the presentation of the merits of the action will be subserved,' and (2) 'the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'" *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (quoting Fed. R. Civ. P. 36(b)).

A party's failure to file a formal motion to withdraw is enough for a court to deem a matter still admitted. *See Williams v. City of Pleasanton*, No. 20-CV-08720-WHO, 2023 WL 8242106, at *7 n.8 (N.D. Cal. Nov. 28, 2023); *Kelso v. Redding Police Dep't*, No. 2:11-CV-1960-TLN-CMK, 2013 WL 2485198, at *2 (E.D. Cal. June 10, 2013). For instance, a matter remains admitted at summary judgment even if a "party submits admissible evidence [at summary judgment] that contradicts the deemed admissions" if they "fail[ed] to file a Rule 36(b) motion." *Williams*, 2023 WL 8242106, at *7 n.8 (collecting cases). Here, E-Go has not moved the Court to withdraw its admissions. *See* Resp. 4. Instead, it argues that the admissions are no longer binding because Eagle Eyes has since filed an amended complaint, and E-Go answered and denied its allegations. *See id.* It thus argues that the answer negates the RFAs. *See id.* However, E-Go cites no authority for the proposition that a subsequent answer overrides an earlier admission, and the Court has found no authority either. Thus, the Court holds that the RFAs are still admitted based on E-Go's failure to file a motion to withdraw them. *See Williams*, 2023 WL 8242106, at *7 n.8.

Even if the Court construed E-Go's argument as a motion to withdraw under Rule 36(b), it would find that the RFAs are admitted. To be sure, the first requirement for Rule 36(b) is met: "The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Conlon*, 474 F.3d at 622 (citing *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). "In *Conlon*, the Ninth Circuit found this requirement satisfied where the plaintiff failed to timely respond to requests for admissions, and the defendant sought summary judgment based on the plaintiff's deemed admissions." *Selsdon v. Daimler Trucks N. Am. LLC*, No. 22-CV-551-BAS-DDL, 2023 WL 3186293, at *1

4

(S.D. Cal. May 1, 2023) (citing *Conlon*, 474 F.3d at 622). Like in *Conlon*, E-Go failed to timely respond, and Eagle Eyes seeks summary judgment based on its deemed admissions. So, like in *Conlon*, the first requirement for withdrawing admissions is fulfilled. *See Conlon*, 474 F.3d at 622.

But the second requirement—showing Eagle Eyes will not be prejudiced—is not met. "When undertaking a prejudice inquiry under Rule 36(b), district courts should focus on the prejudice that the nonmoving party would suffer at trial." *Conlon*, 474 F.3d at 623 (collecting cases). Without more, "reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice." *Id.* at 624 (collecting cases). In *Conlon*, for instance, the Ninth Circuit found prejudice when the non-moving party "relied on the admissions for a total of two and half months, through the discovery and dispositive motion cut-off dates, with no indication that [the moving party] intended to file a motion to withdraw his admissions." *Id.* "In addition, . . . only eight days remained until trial." *Id.* "As a result, the [nonmoving party] conducted none of the discovery it otherwise needed to prove its case a trial." *Id.*

In light of *Conlon*, the Court finds that Eagle Eyes would be prejudiced by allowing E-Go to withdraw its admissions. Eagle Eyes has relied on the admissions since July 1, 2022—over five times longer than the party in *Conlon* did. *See id.* And like in *Conlon*, Eagle Eyes relied on the admissions "through the discovery and dispositive motion cut-off dates." *See id.*; Scheduling Order 2–3, ECF No. 57. To be sure, this matter differs from *Conlon* in that the trial there was eight days away, while the trial here is not until February 5, 2024. *See Conlon*, 474 F.3d at 624; Scheduling Order 3. Despite this difference, the Court finds that Eagle Eyes would be prejudiced if the admissions were withdrawn—Eagle Eyes relied on them for over fifteen months, and both the discovery and dispositive motion deadlines have passed.

And even if both requirements for Rule 36(b) were met, the Court would not allow E-Go to withdraw its admissions. "The text of Rule 36(b) is permissive." *See Conlon*, 474 F.3d at 624 (collecting cases). When the rule's two requirements are met, the Court may still consider whether a party used a "request for admissions to gain an unfair tactical advantage" and whether the admitting party can "show good cause for his dilatory conduct." *Id.* at 625. As Judge Hixson

5

1    pointed out, Eagle Eyes repeatedly warned E-Go that it would move to compel answers, and E-Go

2    still had not responded nearly three months after it acknowledged receipt. *See* RFA Order 4.

3    Furthermore, most of the RFAs asked E-Go "to admit allegations in the complaint that E-Go had

4    already denied" in an earlier answer. *Id.* at 3. The Court thus finds that Eagle Eyes was not

5    attempting to harass E-Go, and that E-Go did not have good cause for failing to respond. *See*

6    *Conlon*, 474 F.3d at 624–25.

7          In sum, based on the plain text of Rule 36 and Ninth Circuit precedent, the Court holds that

8    the RFAs are still admitted.

9          **B.    Based on the RFAs, E-Go infringed.**

10         Eagle Eyes argues that based on the RFAs, all the elements of infringement have been met.

11   Mot. 7–12. It further argues that it is owed between approximately $500,000 and approximately

12   $1,200,000 in damages. *See id.* at 13–19. E-Go responds that Eagle Eyes' patents are invalid and

13   that Eagle Eyes' damages claim is based on disputed material facts and is thus inappropriate for

14   summary judgment. *See* Resp. 4–8.

15         **1.    E-Go's invalidity argument was already raised.**

16         E-Go states that Eagle Eyes' infringement claim fails from the outset because the '763

17   Patent and the '838 Patent are invalid for combining ornamental and functional features. *See id.* at

18   4–5. "[A] design patent, unlike a utility patent, limits protection to the ornamental design of the

19   article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010) (citing *Lee v.*

20   *Dayton–Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988)). "If the patented design is

21   primarily functional rather than ornamental, the patent is invalid." *Id.* at 1293–94 (citing *Lee*, 838

22   F.2d at 1188).

23         Yet E-Go raised the issue of functionality during the claim construction phase of this case.

24   *See* Def.'s Resp. Claim Constr. Br. 5, 7, ECF No. 102. And during claim construction, the Court

25   decided the matter. *See* Claim Constr. Order 4–10, ECF No. 113. Having already ruled on

26   functionality, the Court declines E-Go's attempt to revisit it. Thus, the '763 and '838 Patents are

27   not invalid because of functional elements.

28

### 2. E-Go admitted the elements of infringement.

Eagle Eyes claims that E-Go infringed its design patents based on the ordinary observer test. Mot. 8–12.

"A design patent is infringed if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (cleaned up). "If the claimed and accused designs are not plainly dissimilar, the inquiry may benefit from comparing the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." *Id.* (citation omitted). "Where . . . the claimed design includes several elements, the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Id.* (citations omitted).

In the RFAs, E-Go admitted that the requirements of the ordinary observer test were fulfilled, and as explained above, its admissions are still operative. The test requires that the "two designs are substantially the same" such that an ordinary observer would be "induc[ed] [ ] to purchase [the accused product] supposing it to be the [patented product]." *Id.* And E-Go admitted that its "Accused Products [are] . . . substantially the same" as Eagle Eyes' patented products and that "an ordinary observer . . . [would] be induced to purchase Defendant's products believing them to be" Eagle Eyes' patented products. RFAs 8, 10. Accordingly, the Court finds the ordinary observer test met.

Even if E-Go had not admitted what it did, the Court would likely find the test met. For instance, both Eagle Eyes' '838 Patent and E-Go's accused product share a teardrop-shaped signal light, which the prior art does not share. Comparing the overall designs, the two are remarkably similar in their ornamental features, particularly in the placement and shape of their lights.

| Claimed Design | Prior Art | Accused |
|---|---|---|
| FIG. 1 | FIG. 2 | |
| FIG. 2 | FIG. 3 | |
| FIG. 3 | FIG. 4 | |

E-Go argues that "several aftermarket replacement headlamps" share this design. Resp. 6. But it offers no factual support for that assertion, so the Court does not credit it. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact . . . the court may[] consider the fact undisputed."). Thus, based on the two designs, it appears that E-Go infringed. However, the Court declines to wade deeper into the merits of this issue, given E-Go admitted infringement in the RFAs, Eagle Eyes devoted just one page of briefing to it, and E-Go hardly briefed it at all. *See* RFAs 8, 10; Mot. 12; Resp. 5–6.

The Court thus holds that E-Go infringed the '763 and '838 Patents.[3]

---

[3] E-Go attempts to evade this conclusion by arguing that infringement is inappropriate for summary judgment. *See* Resp. 5. However, courts regularly determine infringement of design patents at this stage. *See, e.g.*, *Ethicon*, 796 F.3d at 1336–37 (affirming the district court's decision on infringement at summary judgment).

8

### C. Eagle Eyes has not shown it is entitled to damages.

Eagle Eyes seeks damages for E-Go's infringement. Mot. 13–19. "The Patent Act provides: 'the court shall award [the patent owner] damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1283 (Fed. Cir. 2017) (quoting 35 U.S.C. § 284). "The two 'alternative categories of infringement compensation' under [the Act] are 'the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1330 (Fed. Cir. 2015) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)). Here, Eagle Eyes seeks damages under a lost profit theory. Mot. 13–19.

"When a patentee proves it would have made additional sales but for a defendant's infringement, the patentee is entitled to be made whole for the profits it proves it lost." *Sunoco Partners Mktg. & Terminals LP v. US Venture, Inc.*, 32 F.4th 1161, 1179–80 (Fed. Cir. 2022) (quoting *Mentor Graphics Corp.*, 851 F.3d at 1284). "More specifically, 'a patentee is entitled to lost[-]profit damages if it can establish four things: (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made.'" *Id.* (citing *Mentor Graphics*, 851 F.3d at 1285).

"Damages under [the lost profit theory] are not easy to prove." *Mentor Graphics*, 851 F.3d at 1285. "For sales in which the patentee cannot prove the elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales. In those circumstances, the patentee obtains its lost profits on the sales where it can prove all the [ ] factors and a reasonable royalty on the other infringing sales." *Mentor Graphics*, 851 F.3d at 1286.

#### 1. There was demand for Eagle Eyes' product.

Eagle Eyes first avers that there was demand for its patented product. Mot. 13–14. "[T]he first [ ] factor simply asks whether demand existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.'" *DePuy*

*Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) (quoting *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548–49 (Fed.Cir.1995) (en banc)).

This factor is clearly met. Eagle Eyes sold thousands of units of products covered by the patents in suit: "964 units in 2016, 5,353 units in 2017, 5,057 units in 2018, 5,678 units in 2019, 9,626 units in 2020, and 14,017 units in 2021." Decl. Jamie Lin ("Lin Decl."), ECF No. 138-2; *see also* Mot. Ex. 4, ECF No. 138-2. Eagle Eyes has thus demonstrated demand for the patented product. *See DePuy*, 567 F.3d at 1330.

Eagle Eyes' evidence regarding its sales come from its sales director in Taiwan. *See* Mot. 14 (citing Lin Decl. ¶ 11). E-Go questions his "authority and responsibility," stating its intention to "challenge[] [them] during the trial." Resp. 7. E-Go also disputes that the sales Eagle Eyes mentions are covered by the patents in suit. Resp. 7. However, E-Go offers no factual basis to question Eagle Eyes' figures or Eagle Eyes' statement that these products are covered by its patents. *See id.* And Rule 56 "requires a party to 'set out *specific facts* showing a genuine issue for trial.'" *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 779 (9th Cir. 2010) (quoting Fed. R. Civ. P. 56(e)(2) (emphasis in *Sullivan*)). Because E-Go fails to set out any facts at all, it has failed to demonstrate there is a material dispute of fact appropriate for trial.

### 2. Eagle Eyes has not shown the absence of acceptable, non-infringing alternatives.

Eagle Eyes next argues that acceptable, non-infringing alternatives were unavailable. Mot. 15. "To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (citing *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353–55 (Fed. Cir. 1999)). "The correct inquiry . . . is whether a non-infringing alternative would be acceptable compared to the patent owner's product, not whether it is a substitute for the infringing product." *Id.*

"Thus, to prove that there are no acceptable non[-]infringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally were willing to buy the

1    patented product for its advantages, or (2) the specific purchasers of the infringing product

2    purchased on that basis." *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1373 (Fed. Cir.

3    2008) (quoting *Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir.

4    1991)). To prove as much, the party seeking damages must point to specific facts in the record.

5    *See Snore, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1381 (Fed. Cir. 2013); *Minco, Inc. v.

6    Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Standard Havens*, 953 F.2d at 1373;

7    *cf. Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002) (holding that sales data

8    and witness testimony can show that acceptable, non-infringing alternatives are available). This

9    "second factor . . . often proves the most difficult obstacle for patent holders." *Mentor Graphics

10   Corp.*, 851 F.3d at 1286.

11       Eagle Eyes does not surmount the obstacle the second factor poses. To be sure, Eagle

12   Eyes points out that it did not license its patent, and that when E-Go began selling its infringing

13   product, Eagle Eyes' sales dropped significantly. Mot. 15 (citing Lin Decl. ¶ 10). This sales drop

14   suggests that there may not have been acceptable, non-infringing alternatives on the market. If

15   there were, Eagle Eyes' sales likely would not have dropped so precipitously. Still, Eagle Eyes

16   must muster evidence in the record to show that "the purchasers in the marketplace generally were

17   willing to buy [Eagle Eyes'] patented product for its advantages, or the specific purchasers of [E-

18   Go's] infringing product purchased on that basis." *Cohesive Techs.*, 543 F.3d at 1373 (quoting

19   *Standard Havens Prod.*, 953 F.2d at 1373); *see also SynQor, Inc.*, 709 F.3d at 1381. Instead, a

20   declarant for Eagle Eyes asserts that "our customer[s] purchase[] our products because of our tear

21   shape design [so] there can be no other non-infringing substitutes," but Eagle Eyes provides

22   absolutely no for his assertion. Lin Decl. ¶ 10. Because Eagle Eyes fails to point to any evidence

23   in the record, it fails to fulfill the second factor for damages. *See Aynor, Inc.*, 709 F.3d at 1381.

24       And because Eagle Eyes fails to meet the second factor, it fails to show that it is entitled to

25   damages under the lost profit theory. *See Sunoco Partners*, 32 F.4th at 1179–80. As noted above,

26   when a patent owner cannot prove the factors under the lost profit theory, they are entitled to

27   damages under the reasonable royalty theory. *See Mentor Graphics*, 851 F.3d at 1286. However,

28   Eagle Eyes has not requested or briefed damages under the reasonable royalty theory, so the Court

will not award them.

## IV. CONCLUSION

In sum, the RFAs remain admitted because E-Go did not file a motion to withdraw them and because Eagle Eyes would be prejudiced by their withdrawal. Based on those admissions, E-Go infringed, and the Court enters summary judgment on this issue. Despite E-Go's infringement, Eagle Eyes has not shown it is entitled to damages under the lost profit theory, at least at this stage of litigation. The Court thus declines to enter summary judgment on damages.

**IT IS SO ORDERED.**

Dated: December 18, 2023

TRINA L. THOMPSON
United States District Judge